```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TEXAS
 2                        MIDLAND-ODESSA DIVISION

 3
    UNITED STATES OF AMERICA,         ) Case No. 7:19-CR-251
 4                                    )
        Plaintiff,                    ) COA No. 20-50575
 5                                    )
      vs.                             ) Midland, Texas
 6                                    )
    PEDRO CONTRERAS,                  )
 7                                    ) June 30, 2020
        Defendant.                    )
 8  _____) 11:06 a.m.

 9
                       TRANSCRIPT OF SENTENCING
10              BEFORE THE HONORABLE DAVID COUNTS
                     UNITED STATES DISTRICT JUDGE
11

12  APPEARANCES:

13  FOR THE GOVERNMENT:
         MR. JAMES GLENN HARWOOD, AUSA
14       MS. BRANDI YOUNG, AUSA
         Office of the United States Attorney
15       Midland-Odessa Division
         400 W. Illinois, Suite 1200
16       Midland, Texas  79701

17  FOR THE DEFENDANT:
         MR. FRED C. BRIGMAN, III
18       Gray & Brigman, PLLC
         206 West College Avenue
19       San Angelo, Texas  76903

20  COURT REPORTER:
         MS. ANN M. RECORD, RMR, CRR, CMRS, CRI
21       200 East Wall Street, Suite 222
         Midland, Texas  79701
22       (432) 685-0361
         ann_record@txwd.uscourts.gov
23
          Proceedings reported by machine shorthand reporter.
24        Transcript produced by computer-aided transcription.

25
```

1 **I N D E X**

2

3 **PAGE**

4

5 Proceedings 3

6 Ruling by The Court 13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2             (At 11:06 a.m., proceedings commenced)
 3             (Defendant present)
 4             THE COURT:  The Court calls U.S. vs. Pedro Contreras,
 5    MO:19-CR-251 today for sentencing.
 6             MR. HARWOOD:  Glenn Harwood for the Government, Your
 7    Honor.
 8             MR. BRIGMAN:  Fred Brigman for Pedro Contreras.
 9             THE COURT:  Thank you.
10             And, sir, you're Pedro Contreras; is that right?
11             THE DEFENDANT:  Yes, Your Honor.
12             THE COURT:  And, Mr. Brigman, do you believe
13    Mr. Contreras to be competent?
14             MR. BRIGMAN:  Yes, Your Honor.
15             THE COURT:  The Court, just so everybody knows, I've
16    read the extensive sentencing memorandum from the government as
17    well as the defense and, of course, the report and the
18    objections.  We also have a few letters as well in reference to
19    this cause, including the victim's mother sent a letter.
20             Mr. Brigman, are there --
21             Mr. Contreras, you did review the report, right?
22             THE DEFENDANT:  Yes, Your Honor.
23             THE COURT:  And, Mr. Brigman --
24             I may have asked you that, Mr. Contreras.  I
25    apologize.  I just wanted to make sure I got that on the
```

1  record.
2          Mr. Brigman, are there objections that remain to the
3  report?
4          MR. BRIGMAN:  Your Honor, I filed some objections.
5  The probation officer answered those.  I guess really our main
6  objection it probably comes up more in allocution than now is
7  that we're asking for a variance in sentencing.
8          THE COURT:  Okay.  So the objections are either
9  conceded or overruled.  I mean, I don't know exactly.  It
10 appears that we all rely upon the probation office's response,
11 and there does remain a motion for downward departure or
12 variance.
13         Mr. Harwood, are there objections or corrections --
14 and, Mr. Brigman, are there any corrections to the report?
15         MR. BRIGMAN:  No, Your Honor.
16         THE COURT:  No corrections.
17         Mr. Harwood, are there objections or corrections from
18 the government?
19         MR. HARWOOD:  No, Your Honor.
20         THE COURT:  All right.  The Court has reviewed the
21 Presentence Investigation Report prepared by U.S. Probation
22 Officer Kara Foster.
23         I find the report to be accurate.  I adopt it and the
24 application of the United States Sentencing Guidelines
25 contained in the report.

1    I find the total base offense level to be 43.
2    Criminal history category is I.
3    The guideline range -- the statutory provisions for
4 Count One would be 15 to 30 years.  For Count Six, ten years to
5 life.  The guideline range is actually life.
6    The supervised release term for Count One under the
7 guidelines is five years to life; Count Six is the same, five
8 years to life.
9    Mr. Contreras is ineligible for probation.
10   There is a fine of $50,000 to $250,000 that's
11 available in each count.
12   I've not received a restitution figure, but I'll ask
13 about that.  I've not received a tangible restitution figure.
14   There is a $100 mandatory special assessment pursuant
15 to the Victims of Crime Act.  That's $200 total.
16   And then there is a $5,000 assessment for each
17 count -- One and Six, that's available.  It's $10,000 total --
18 pursuant to the Justice for Victims of Trafficking Act
19 assessment.
20   Mr. Brigman, if you would, go ahead and argue and
21 make your case for a downward departure or a variance.
22   MR. BRIGMAN:  Judge, my client turned 20 years old, I
23 believe it was March 21st.
24   THE DEFENDANT:  Yes, sir.
25   MR. BRIGMAN:  And when this case started -- when he,

1  I guess, started his scheme, he was 17 years old.  The case
2  culminated when he was about 18 1/2 years old.  He has no
3  criminal history.
4              THE COURT:  You're 20 years old now, right?
5              MR. BRIGMAN:  He's 20 now.
6              THE COURT:  Okay.
7              MR. BRIGMAN:  He's been in custody for about eight
8  months, I believe.  And when I first got appointed to him I was
9  in court.  Somebody in the clerk's office made a joke to Austin
10 and said, What are you prosecuting kids now?  And he is -- he
11 was a kid when he came in.
12             And when I went over the evidence with him and
13 everything, he acknowledged his guilt.  And he stood up and he
14 pled guilty like a man.  I mean, he didn't whimper.  He didn't
15 cry.  He didn't do anything.  He pled guilty.  He knew he had a
16 whole lot of exposure.  He knows he did wrong in this case, and
17 he know that every day.  Every time I talk to him he knows --
18 he's probably the most remorseful client I've ever had for his
19 actions, and I believe he's learned from those.
20             There are lots of psychological studies, and there
21 are some that aren't psychological but just based on life
22 experience, they say that a male's brain doesn't fully develop
23 until they're about 22 years old.  That they take unnecessary
24 risks.  That they do all kinds of stupid stuff, and they think
25 they're invincible.

1     I don't know if Abe -- is what he goes by. I don't
2 know if Abe thought he was invincible. I don't know what he
3 thought, but this behavior is not -- not who he is. He's
4 somebody that cares about people, that does his best to think
5 of others before himself.
6     He's a very young man, and he has potential given the
7 right counseling and the right treatment to be a productive
8 member of society. He was trying to be a productive member of
9 society when all this stuff happened; but he just caved into
10 evil thoughts, I guess, is the best way I can put it.
11     I've represented people recently in cases similar to
12 this in a different district, in the Northern District; and
13 they deserved every bit of time they got. They were older
14 people. They knew what they were doing. And they were evil
15 people. And they got huge sentences. Abe is not an evil
16 person. He deserves a second chance.
17     There are so many variables of why he made these
18 mistakes. One of the things, the disparity in sentencing
19 between state court and federal court -- if this was a state
20 court, this would be a second degree felony. Maximum
21 punishment, 20 years. And he would be eligible for probation.
22     Well, we're not in state court; and I'm very aware of
23 that. And so the punishment is extremely more significant than
24 it is here -- or the punishment here is extremely more
25 significant than it is in -- in federal court.

1    Your Honor, you've got some options.  And one of the
2    reasons I'm asking for a variance is if you gave him a
3    sentence, even at the statutory minimum -- if you gave him a
4    sentence at the statutory minimum with lifetime supervised
5    release, you could look and see how he does.  If he does wrong,
6    he's still subject to going back to prison for the rest of his
7    life.  And I submit to you but for the use of electronic
8    devices and the interstate commerce, this case would be in
9    state court.
10    But unfortunately, we're here, and Abe is here to
11    face the music.  And, Your Honor, we would ask for a sentence
12    at the bottom of the statutory minimum with a term of lifetime
13    supervision.
14    THE COURT:  Mr. Contreras, what would you like to
15    say?
16    THE DEFENDANT:  First of all, I would just like to
17    apologize to my family for putting them through all this
18    trouble and as well as to the other family for the pain I've
19    caused them.  And I'm just truly, from the bottom of my heart,
20    sorry.  There is not much else I can do besides apologize and
21    ask for forgiveness and take the consequences that come my way
22    and better myself.
23    THE COURT:  You know, I read through the facts of
24    this case, I don't see a boy who made mistakes.  I see somebody
25    who was deceptive and a predator on a much younger boy, and

somebody who took advantage of probably likely that boy's self-esteem issues. Maybe that was just the luck of the draw. You figured it out and got lucky with it. But I have no doubt that you would -- that this is what you do and this is what you would continue to do.

So just to be clear, Mr. Brigman, the objections from the defense are withdrawn, right?

MR. BRIGMAN: Well, Your Honor, I just chose not to argue all those other objections.

THE COURT: Okay. So they're not withdrawn.

MR. BRIGMAN: They're not withdrawn.

THE COURT: Let me state on the record then that they're overruled, and I rely upon the probation officer's responses without more.

I'm reading a letter from the victim's mom, and she writes for three or four pages -- parts of four, and you can just tell -- because she keeps coming back to the same -- I'm not going to read it to you -- but she keeps coming back to the same -- because as humans, we try to rationalize, we try to justify, we have to figure out why this happened and why of all people that it happened to my son.

And she keeps trying. I can tell. She's going through her own mental abuse here, not to even consider what the boy went through and is going through and will go through probably for the rest of his life.

1  You can tell she's struggling with it so hard she
2  keeps coming back to this mental issues -- mental abuse issue
3  as to her son.  And then she just can't figure out -- I mean,
4  there is just no answer for her, and there is nothing to do,
5  because that's what we want to do as parents.  You're not a
6  parent, but that's what parents want to do is we want to fix it
7  and make it better for our kids, and there is just nothing she
8  can do about that.
9  So the pain you caused lives a lifetime with a number
10 of people.  And it was -- and, frankly, it was well thought
11 out.  You're a smart guy.
12 I read letters from Kaitlin Contreras.  There is a
13 letter from -- is it Elijah?
14 THE DEFENDANT:  Alicia, Your Honor.
15 THE COURT:  Alicia.  Tiffany Taylor.  Kaitlin
16 Contreras.  Is that the same one?  Yes, that's the same one.  I
17 got the same one twice.  And then Nubia Nava.  And there is
18 another one here that wasn't signed.  Well, it's Torres, Ana
19 Torres.  It wasn't signed, but she says her name.
20 And so I see a different person in the letters that I
21 received about you and in support of you.
22 And thank you, Mr. Brigman, for getting those in.
23 It's helpful.
24 And they call you Abraham.  So I guess they call you
25 Abe or Abraham, right?

1  THE DEFENDANT: Yes, Your Honor.

2  THE COURT: But I keep coming back to this mom's
3  letter, and it just breaks your heart because I don't know what
4  to tell her to help her either. I don't know that there is an
5  answer now that -- you can't unring that bell. It's been done.
6  It can't be undone.

7  She does try to come to the conclusion that some of
8  the damage will never go away. I would suspect that most or
9  all the damage won't go away just because of the trauma of
10 that. This is predatory. What you did was predatory. Does
11 that make sense to you? Do you understand what I mean when I
12 say that?

13  THE DEFENDANT: Yes, Your Honor.

14  THE COURT: I'm not trying to berate you, and I'm
15 not. And it comes off on the transcript like I am; I'm not.
16 Just gently trying to reason through this. Sort of the way you
17 reasoned through it with him. That was a pretty good trick. A
18 pretty dadgum good trick. And it is evil to do that to a
19 fellow human being. You wouldn't want to be treated that way
20 and vile and disgusting on top. And I feel sorry for him. I
21 feel sorry his parents, his family; and I feel sorry for your
22 family too. I do.

23  Mr. Harwood.

24  MR. HARWOOD: Your Honor, could I have about two
25 minutes to step out in the hallway?

1 THE COURT: Yes, sir. Of course.
2 Y'all have a seat. This may take three or four.
3 (Recess from 11:21 a.m. to 11:26 a.m.)
4 MR. HARWOOD: Your Honor, Ms. Young is on here way
5 up. She's going to come up and assist in addressing the
6 sentencing in this case.
7 THE COURT: Okay. Thank you. We'll take a
8 five-minute break.
9 (Recess from 11:26 a.m. to 11:35 a.m.):
10 THE COURT: Mr. Brigman, if you and Mr. Contreras
11 would come back over to the lectern.
12 And we've been joined by Ms. Young. Ms. Young.
13 MS. YOUNG: Yes, Your Honor. Brandi Young on behalf
14 of the United States. I'm going to complete the sentencing.
15 THE COURT: Go right ahead. And we were just getting
16 to your allocution.
17 MS. YOUNG: Okay. I apologize, Your Honor. The
18 United States is in an interesting position in this case, and
19 I'm aware of the sentencing memorandum that was filed, that the
20 Court has reviewed those. And as the Court knows, the United
21 States -- U.S. Attorney's Office, particularly this division,
22 this district, we appreciate the guidelines, and we appreciate
23 the guidelines and where -- the things they factor into.
24 And so while I support the sentencing memorandum that
25 was filed by Ms. Daniels that I think with the assistance of

1  Mr. Berry in this case as the prosecutors here, I do think that
2  it would be negligent if we did not also say that that
3  memorandum does not address some of the factors raised by
4  Mr. Brigman in his motion for downward departure.
5        I think that the memorandum is accurate.  I think it
6  reflects the seriousness of this conduct.  But I do think the
7  government has submitted a picture to the Court that did not
8  also evaluate all of the 3553 factors.
9        And so for those reasons, we understand Mr. Brigman's
10 position, we understand those characteristics, and we felt it
11 was necessary to submit that to the Court.
12       THE COURT:  Thank you.
13       The Court departs from the recommended sentence and
14 grants the variance for the reasons stated in Mr. Brigman's
15 very well written sentencing memorandum.
16       The Court also respects the guidelines,
17 Mr. Contreras.
18       Pursuant to the Sentencing Reform Act of 1984, which
19 I have considered in an advisory capacity, and the sentencing
20 factors set forth in 18 U.S.C., Section 3553(a), which I have
21 considered in arriving at a reasonable sentence, I feel like
22 and I find that the guideline range in this case does not
23 adequately represent the seriousness of the offense as well as
24 the -- your criminal history, your age, a number of other
25 things.

               The defendant is placed in the custody of the United
States Bureau of Prisons as follows:  To serve a term of
imprisonment of 15 years in Count One.  That's 180 months.  For
Count Six, ten years.  That's 120 months.  Those sentences to
run consecutively.
               Do you understand?
               THE DEFENDANT:  Yes, Your Honor.
               THE COURT:  Upon release from the Bureau of Prisons,
you are placed on supervised release to serve a term of ten
years in each count.  Those to run concurrently.
               Do you understand that?
               THE DEFENDANT:  Yes, Your Honor.
               THE COURT:  So those run together.  So it's ten
years.
               I'm not going to impose a fine.  I find an inability
to pay a fine.
               I've still not come up with what I consider a
tangible restitution amount.  Does the government have anything
to offer?
               MS. YOUNG:  We do not at this time, Your Honor.  We
would ask that we be allowed to work with Mr. Brigman as well
as U.S. Probation with Ms. Daniels and Mr. Berry who were
assigned to the case.  I know a witness victim impact statement
was submitted and that can have either -- if we need to come
back and have a contested restitution hearing, we can certainly

1  do that as the provisions allow by the law or we can reach a
2  restitution agreement.  I don't know if that's going to be
3  possible, but that would be our preference.
4              THE COURT:  Okay.  And if we can't reach an
5  agreement, we can have a contested hearing, and that's
6  perfectly fine.
7              So we're going to likely come back, Mr. Contreras, if
8  a restitution figure cannot be reached.
9              In the mean time, I'll assess -- well, let me back up
10 for a minute and tell you that the standard and mandatory
11 conditions of supervision are imposed.
12             Additionally, the Court will assess the conditions of
13 supervision that are stated on page -- the special conditions
14 on Page 18 of the Presentence Report in Paragraphs 120, 121,
15 122, 123, and 124, those include that you participate in a sex
16 offense specific treatment program and submit to the periodic
17 polygraph testing as a means to ensure compliance.
18             Also, that you have no contact with the victim or any
19 victims in this case.
20             That you not have any direct contact with any child
21 that you know or reasonably should know to be under the age of
22 18.
23             That you not view or possess any visual depiction of
24 any type of sexually explicit conduct on any type of machine
25 or -- of any kind or view it at all.

1            And that you submit to the search condition of
2 supervision within the Western District of Texas.
3            There is a $100 mandatory special assessment you are
4 required to pay to the Crime Victims Fund in each count.
5 That's $200.
6            And there is a $5,000 mandatory special assessment
7 for Counts One and Six -- that's $10,000 -- pursuant to the
8 Justice for Victims of Trafficking Act because the Court finds
9 you to be -- not to be indigent because of your earning
10 potential.  You can get out of prison.  That's the point.  And
11 you're going to earn money, earn a living, and then you'll pay
12 that assessment as part of your supervised release.
13            Mr. Brigman, so your motion for variance is granted.
14 Any particular place Mr. --
15            MR. BRIGMAN:  Your Honor, I forgot to mention this.
16 Mr. Contreras and I have spoken about it.  We would like a
17 nonbinding recommendation to FCI Seagoville.
18            THE COURT:  Okay.  I'll make that recommendation.
19            Ms. Young, anything further on behalf of the
20 government?
21            MS. YOUNG:  The United States would move to dismiss
22 the remaining counts of the indictment pursuant to the plea
23 agreement.
24            THE COURT:  And this was the original indictment he
25 pled guilty to, right?

1     MS. YOUNG: Yes, Your Honor. He came in and pled to
2 One and Six within about three months of being indicted.
3     THE COURT: Okay. That motion is granted. The
4 remaining counts in the indictment are dismissed.
5     Officer Foster, let me see you for a minute.
6     (Off-the-record sidebar conference)
7     THE COURT: Mr. Contreras.
8     THE DEFENDANT: Yes, Your Honor.
9     THE COURT: Who is here from your family?
10    THE DEFENDANT: My mother, her boyfriend, my sister,
11 my brother-in-law, and my nephew.
12    THE COURT: Is the nephew the little one?
13    THE DEFENDANT: Yes, Your Honor.
14    THE COURT: It's very nice for all of y'all to come.
15 It's very difficult -- these are very difficult, as you know,
16 as you can tell. I know it's hard on you. I feel sorry for
17 all of y'all. I've told you that. I really mean it. And I'm
18 sorry for the separation this is going to cause as well.
19    You have the right to appeal. If you're unable to
20 afford appealing -- well, you have the right unless you've
21 given it up, and you may have given that up in the plea
22 agreement. But you have the right to do that. If you're
23 unable to afford the costs, then the court picks that up and
24 the government will pick that up, that cost of appeal. But you
25 have to file Notice of Appeal in writing within 14 days of the

1  entry of the judgment if you're going to do that.
2          So I thank your family for being here, and they
3  obviously love you unconditionally.  That's a great thing.
4          THE DEFENDANT:  Yes, Your Honor.
5          THE COURT:  And I'm sorry it took this to prove it.
6  They obviously have proven it to you.  So I wish you the very
7  best.
8          I'll make the recommendation to Seagoville.
9          And I remand you to the custody of the United States
10 Marshals to serve your sentences.  Good luck.
11         THE DEFENDANT:  Thank you, Your Honor.
12         MR. BRIGMAN:  Thank you, Your Honor.
13         THE COURT:  Thank you.
14         (Proceedings concluded at 11:44 a.m.)
15                       * * * * *
16                    **C E R T I F I C A T E**
17         I, ANN M. RECORD, United States Court Reporter for
   the United States District Court in and for the Western
18 District of Texas, hereby certify that the above and
   foregoing contains a true and correct transcript of the
19 proceedings in the above-entitled and numbered cause.
20         WITNESS MY HAND on this 19th day of August, 2020.
21
22                    */s/Ann M. Record*
                      Ann M. Record, RMR, CRR, CMRS, CRI
23                    United States Court Reporter
                      200 East Wall Street, Suite 222
24                    Midland, Texas  79701
                      Telephone:  (432) 685-0361
25                    e-mail:  ann_record@txwd.uscourts.gov