IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Civil No. |
| Respondent-Plaintiff, | * | Orig. Cr. No. 7:19-cr-00251-DC-1 |
| v. | * | |
| PEDRO CONTRERAS, | * | |
| Petitioner-Defendant. | * | |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO VACATE, CORRECT, OR SET ASIDE
### THE PETITIONER'S SENTENCE PURSUANT TO 28 U.S.C. §2255

As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant case constituted a denial of the Petitioner's right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Specifically, counsel failed to conduct adequate pre-trial investigation, leading to entry of an invalid guilty plea. Counsel also failed to raise mitigating factors at sentencing. These errors were not merely procedural, but substantially infringed upon the Petitioner's constitutional rights. At a minimum, the Petitioner requests a hearing be held on these issues.

### STATEMENT OF THE ISSUES

I. The Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to conduct adequate pre-trial investigation, leading to the entry of an invalid guilty plea.

II. The Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to present mitigating factors at sentencing.

III. The Petitioner is entitled to an evidentiary hearing on these issues.

1

## STATEMENT OF JURISDICTION

Federal law provides an avenue for those whose sentences have been lengthened unconstitutionally. Title 28 U.S.C. §2255 is a statute that provides an avenue for redress of federal constitutional violations in a federal court. "A prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence . . . " 28 U.S.C. §2255. The Petitioner feels that his best opportunity to obtain fair and substantial justice regarding his sentence is through this petition, as the federal courts have historically served as a safety net for those who have had their constitutional rights violated.

## LAW AND ARGUMENT

In order to succeed in a §2255 motion, the Petitioner must show that the adjudication of a claim in federal court resulted in a sentence that was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence. 28 U.S.C. §2255. The Constitution, as the framework from which all Federal law springs, must not be violated as applied to the Petitioner.

I.   **The Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to conduct adequate pre-trial investigation, leading to the entry of an invalid guilty plea.**

The Sixth Amendment to the United States Constitution guarantees that criminal defendants are entitled to the assistance of counsel in presenting their defense. U.S. Const., amend. VI. The High Court has stated, "[t]he right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process."

Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). Further, the Court has recognized that "the right to counsel is the right to *effective* assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970) (emphasis added). The right to effective assistance of counsel at any critical stage encompasses the right to have an advocate for one's cause. Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct 321, 322, 84 L.Ed 377 (1940). Counsel must "subject the prosecution's case to meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 659 (1984).

To succeed on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2055, 2063 (1984). The Strickland Court went on to hold that in order for a defendant to prevail on an ineffective assistance of counsel claim, he must satisfy a two-prong test. Id.; see also Bower v. Quarterman, 497 F.3d 459 (5th Cir. 2007). A defendant should demonstrate that the representation he received "fell below an objective standard of reasonableness" and "a reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different." Strickland, 466 U.S. at 688, 694.

A court reviewing a claim of ineffective assistance must determine whether a reasonable probability exists that, but for counsel's unprofessional errors, the results of the proceedings would have been different or whether the result was fundamentally unfair or unreliable. Id.(citing Lockhart v. Fretwell, 113 S.Ct. 838 (1993)). Ultimately, the Strickland test requires courts to focus upon whether counsel's performance was sufficient to ensure the fundamental fairness of the proceeding. Id. However, the prejudice that must be shown need not be anything more than something as small as one additional day in jail. See Glover v. United States, 531

3

U.S. 198 (2001).

"It is the client's right to expect that his lawyer will use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation of the client's interests." <u>Frazer v. United States</u>, 18 F.3d 778, 785 (9th Cir.1994). "Defense counsel must do his utmost to bring his legal acumen to bear on behalf of the defendant; keep the defendant fully informed of developments in the case and consult with the defendant on all major decisions to be made; conduct a reasonable pre-trial investigation, which should include contacting potential witnesses; prepare adequately and professionally for trial; conduct the trial to the best of his ability; and, at the bottom, serve as a vigorous and devoted advocate of the defendant's cause." <u>United States Ex. Rel. Partee v. Lane</u>, 926 F.2d 694, 702 (7th Cir. 1991).

In the context of guilty pleas, the United Supreme Court announced that counsel must give objectively reasonable advice before the presumption of effectiveness will be applied. <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S.Ct. 366 (1985). Ineffective assistance of counsel at the plea stage of a proceeding will render the plea involuntary, and hence invalid. <u>Id.</u> at 56, 106 S.Ct. at 369. The high court has stated that the prejudice prong in guilty plea cases focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. <u>Id.</u> at 59. In other words, in order to satisfy the "prejudice" requirement, the petitioner must show that a reasonable probability exists that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. <u>Id.</u>(holding that where the alleged ineffectiveness of counsel is a failure to investigate or prepare, prejudice only results if further investigation "would have led counsel to change his recommendation as to the plea."); see also

United States v. Harrell, 2013 U.S. App. LEXIS 23218 (9th Cir. 11/18/13); Bouchillon v. Collins, 907 F.2d 589, 597-98 (5th Cir. 1990)((Where defendant apprised his counsel of mental problems prior to plea hearing, counsel's failure to perform any investigation whatsoever for a possible insanity defense violated Strickland). The ABA Standards Relating to the Administration of Criminal Justice provides that "it is unprofessional conduct for the lawyer to understate or overstate the risks, hazards, or prospects of the case to exert undue influence on the accused's decision as to his or her plea." Standard 4-5.1(c) (1979).

In the instant matter, defense counsel failed to investigate Clifford Doyle Wingard. The Petitioner submits that Wingard utilized a fake online account to entice the Petitioner to send nude photographs. Exhibit A - Affidavit, Pedro Contreras. Wingard then blackmailed the Petitioner into committing the acts at issue with the victim. Exhibit A. Counsel also failed to investigate the fact that the IP address from whence the offending materials originated was accessible to numerous parties, and the material at issue could have been produced or obtained by a third party. Exhibit A. As counsel failed to conduct adequate pre-trial investigation, the Petitioner had little choice but to accept a plea, as he was not presented with any other viable option by defense counsel. Had counsel conducted the above investigation, the Petitioner would not have entered a guilty plea, but would have instead proceeded to trial. Exhibit A.

There can be little doubt that counsel's failure to present viable alternatives to pleading guilty rendered counsel's conduct below any objective standard of reasonableness. Counsel failed to put forth a realistic array of viable options to the Petitioner. The Petitioner was prejudiced by counsel's unreasonable conduct, in that he entered an invalid plea. Based upon counsel's failure to provide a realistic assessment of the consequences of pleading guilty, there

can be little doubt that the Petitioner entered an invalid plea based upon counsel's ineffectiveness.

A guilty plea must be made knowingly, voluntarily, and intelligently. United States v. Brown, 328 F.3d 787, 789 (5th Cir. 2003)(citing United States v. Reyes, 300 F.3d 555, 558 (5th Cir. 2002)). In order to plead voluntarily, a defendant must know the direct consequences of his plea, including the actual value of any commitments made to him. Mabry v. Johnson 104 S.Ct. 2543, 2547 (1984). The Supreme Court has ruled that a plea must be found to be involuntary if it was based upon promises or threats which deprived it of a voluntary character. Machibroda v. United States, 368 U.S. 487, 493 (1962). "The validity of a guilty plea hinges on whether it was a voluntary and intelligent choice among alternative courses of action open to the defendant." Banks v. United States, 920 F.Supp. 688 (E.D.Va.1996).

As noted, the Petitioner's plea was not a valid choice among alternatives, as counsel failed to present to the Petitioner any viable defense. Instead, counsel ignored viable defenses. Such deprived the plea of its voluntary character. As the Petitioner received constitutionally ineffective assistance of counsel during plea negotiations leading to an invalid plea, the Petitioner submits that his plea must be vacated, and this matter set for rehearings consistent with the findings of this Court and the constitutional principles of fair play and substantial justice.

**II.  The Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to present mitigating factors at sentencing.**

The Sixth Amendment to the United States Constitution guarantees that criminal defendants are entitled to the assistance of counsel in presenting their defense. U.S. Const., amend. VI. The High Court has stated, "[t]he right to counsel is a fundamental right of criminal

defendants; it assures the fairness, and thus the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). Further, the Court has recognized that "the right to counsel is the right to *effective* assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970) (emphasis added). The right to effective assistance of counsel at any critical stage encompasses the right to have an advocate for one's cause. Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct 321, 322, 84 L.Ed 377 (1940). Counsel must "subject the prosecution's case to meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 659 (1984).

To succeed on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2055, 2063 (1984). The Strickland Court went on to hold that in order for a defendant to prevail on an ineffective assistance of counsel claim, he must satisfy a two-prong test. Id.; see also Bower v. Quarterman, 497 F.3d 459 (5th Cir. 2007). A defendant should demonstrate that the representation he received "fell below an objective standard of reasonableness" and "a reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different." Strickland, 466 U.S. at 688, 694.

A court reviewing a claim of ineffective assistance must determine whether a reasonable probability exists that, but for counsel's unprofessional errors, the results of the proceedings would have been different or whether the result was fundamentally unfair or unreliable. Id.(citing Lockhart v. Fretwell, 113 S.Ct. 838 (1993)). Ultimately, the Strickland test requires courts to focus upon whether counsel's performance was sufficient to ensure the fundamental fairness of the proceeding. Id. However, the prejudice that must be shown need not be anything

7

more than something as small as one additional day in jail. See <u>Glover v. United States</u>, 531 U.S. 198 (2001).

"It is the client's right to expect that his lawyer will use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation of the client's interests." <u>Frazer v. United States</u>, 18 F.3d 778, 785 (9th Cir.1994). "Defense counsel must do his utmost to bring his legal acumen to bear on behalf of the defendant; keep the defendant fully informed of developments in the case and consult with the defendant on all major decisions to be made; conduct a reasonable pre-trial investigation, which should include contacting potential witnesses; prepare adequately and professionally for trial; conduct the trial to the best of his ability; and, at the bottom, serve as a vigorous and devoted advocate of the defendant's cause." <u>United States Ex. Rel. Partee v. Lane</u>, 926 F.2d 694, 702 (7th Cir. 1991).

The "Sixth Amendment right to counsel extends to sentencing in federal cases." <u>Mempha v. Rhay</u>, 389 U.S. 128, 134 (1967); <u>Ladd v. Cockrell</u>, 311 F.3d 349 (5th Cir. 2002). Courts have often recognized that one of the important functions of defense counsel at sentencing is to ensure that the defendant is sentenced on the basis of accurate information. In <u>Townsend v. Burke</u>, 334 U.S. 736 (1948), the United States Supreme Court stated that "[c]ounsel would have been under a duty to prevent the court from proceeding on such false assumptions and, perhaps, under a duty to seek remedy elsewhere if they persisted." <u>Id.</u> at 740. "[A] failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel." <u>Arredondo v United States</u>, 178 F.3d 778, 788 (6th Cir 1999); see also <u>Baldwin v.</u>

Maggio, 704 F.2d 1325, 1332-33 (5th Cir.), cert. denied, 467 U.S. 1220, 81 L.Ed. 2d 374, 104 S.Ct. 2669 (1984).

As the Supreme Court recognized in Strickland, "counsel bears a duty to make a 'reasonable' investigation of the law and facts in his client's case." Strickland, 466 U.S. at 691. Also, as stated in Strickland

> strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, *a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgements.*

Strickland, 466 U.S. at 691. The ABA Standards Relating to the Administration of Criminal Justice also state:

> [d]efense counsel should present to the court any ground which will assist in reaching a proper disposition favorable to the accused. If a presentence report or summary is made available to the defense lawyer, he or she should seek to verify the information contained in it and should be prepared to supplement or challenge it if necessary.

Standard 4-8.1 (1979). It is reasonable to require counsel to make independent investigation of the mitigating circumstances for sentencing and not to rely merely on the cross-examination of witnesses at a sentencing hearing and espousement of defendant's unsupported view of the events. Washington v. Strickland, 673 F.2d 879 (5th Cir. 1982).

In the instant matter, defense counsel failed to raise a challenge to the Petitioner's sentence based upon his lessened culpability compared to a typically situated adult offender,

thereby resulting in the issuance of sentence in violation of the Petitioner's rights under the Eighth Amendment to the United States Constitution. The Eighth Amendment to the United States Constitution succinctly prohibits "excessive" sanctions. U.S. Const., Amend. VIII; <u>Atkins v. Virginia</u>, 122 S.Ct. 2242, 2246, 153 L.Ed.2d 335, 343 (2002). The Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., Amend. VIII. In <u>Weems v. United States</u>, 217 U.S. 349 (1910), the Supreme Court held that a punishment of 12 years jailed in irons at hard and painful labor for the crime of falsifying records was excessive. The Court explained "that it is a precept of justice that punishment for crime should be graduated and proportioned to the offense." <u>Id.</u> at 367.

The High Court has repeatedly applied the proportionality precept in later cases interpreting the Eighth Amendment. See <u>Harmelin v. Michigan</u>, 501 U.S. 957, 997-998 (1991) (Kennedy, J., concurring in part and concurring in judgment); see also <u>id</u>. at 1009-1011 (White, J., dissenting). Thus, even though "imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual," it may not be imposed as a penalty for "the 'status' of narcotic addiction," <u>Robinson v. California</u>, 370 U.S. 660, 666, 8 L.Ed.2d 758, 82 S.Ct. 1417 (1962), because such a sanction would be excessive. As Justice Stewart explained in <u>Robinson</u>: "Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." <u>Id.</u> at 667.

The United States Supreme Court has read the text of the Eighth Amendment to prohibit "all excessive punishments, as well as cruel and unusual punishments that may or may not be excessive." <u>Atkins</u>, 122 S.Ct. at 2247 n.7. A claim that punishment is excessive is judged not by

the standards that prevailed in 1685 when Lord Jeffreys presided over the "Bloody Assizes" or when the Bill of Rights was adopted, but rather by those that currently prevail. As Chief Justice Warren explained in his opinion in Trop v. Dulles, 356 U.S. 86 (1958): "The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. * * * The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Id. at 100-101. "This is because '[t]he standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the basic mores of society change.'" Kennedy v. Louisiana, 554 U.S. 407, 128 S. Ct. 2641, 2649, 171 L. Ed. 2d 525, 538 (2008)(quoting Furman v. Georgia, 408 U.S. 238, 382, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972) (Burger, C. J., dissenting)).

The Atkins case recognized the lesser culpability of the mentally retarded, even in the commission of capital crimes, and forbid the imposition of the death penalty on mentally retarded offenders. Similarly, the Supreme Court recently recognized that persons who commit crimes while they are under 18 years of age are not as morally culpable as similarly disposed adult offenders, and prohibited the imposition of the death penalty on juvenile offenders, regardless of the heinousness of their crimes. Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 1194 (2005). As compared to adults, juveniles have a "lack of maturity and an underdeveloped sense of responsibility"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed." Id. at 569-570, 125 S. Ct. 1183, 161 L. Ed. 2d 1. These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects

11

unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Id. at 573, 125 S. Ct. 1183, 161 L. Ed. 2d 1.

The Supreme Court has gone a step further regarding the imposition of life sentences on juvenile murders convicted of committing a non-murder offense. On May 17, 2010, the United States Supreme Court issued its decision in Graham v. Florida, 130 S.Ct. 2011 (2010). Writing for a 5-to-4 majority, Justice Anthony Kennedy called life without parole an "especially harsh punishment" for a juvenile and said that while states may be permitted to keep young offenders locked up, they must give defendants "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." As such, juvenile offenders could not receive a life sentence for non-murder offenses. The Graham decision further likened life without parole for juveniles to the death penalty, thereby evoking a second line of cases. In those decisions, the Supreme Court has required sentencing authorities to consider the characteristics of a defendant and the details of his offense before sentencing him to death. See, e.g., Woodson v. North Carolina, 428 U.S. 280, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (plurality opinion).

The Supreme Court expanded the Graham decision in its decision issued in Miller v. Alabama, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).[1] In Miller, the Court found that the Eighth Amendment to the United States Constitution forbade a sentencing scheme that mandated life in prison without possibility of parole for juvenile offenders. Id. In Miller, the confluence of the two lines of precedent relied upon in Graham led to the conclusion that mandatory life without parole for juveniles violates the Eighth Amendment. Id. Such would violate "the evolving

---

[1] Together with No. 10-9647, Jackson v. Hobbs, Director, Arkansas Department of Correction

standards of decency that mark the progress of a maturing society." Id.

The Petitioner submits that the rationale underlying the Graham and Miller decisions should have been raised by defense counsel in the Petitioner's case, as mitigating factors existed that made the Petitioner less culpable than a similarly situated adult. Herein, the Petitioner suffered from prior mental, physical and sexual abuse at the hands of Clifford Doyle Wingard. Exhibit A. Such events caused the Petitioner to suffer from anxiety and depression. Exhibit A. Common symptoms of depression include trouble thinking, concentrating, making decisions and remembering things, as well as frequent thoughts of death.[2] Further, the Petitioner continues to feel the emotional and mental effects of his troubled childhood. The immediate emotional effects of abuse and neglect can translate into lifelong consequences. Researchers have identified links between abuse and neglect and poor mental and emotional health. In one long-term study, as many as 80 percent of young adults who had been abused met the diagnostic criteria for at least one psychiatric disorder at age 21. These young adults exhibited many problems, including depression, anxiety, eating disorders, and suicide attempts. (Silverman, Reinherz, & Giaconia, 1996). Other psychological and emotional conditions associated with abuse and neglect include panic disorder, dissociative disorders, attention-deficit/hyperactivity disorder, depression, anger, posttraumatic stress disorder, and reactive attachment disorder. (Teicher, 2000; De Bellis & Thomas, 2003; Springer, Sheridan, Kuo, & Carnes, 2007); and (2) social difficulties.

Clearly, the particular circumstances of the Petitioner's life render him less culpable than a similarly situated adult. Unfortunately, the Petitioner suffered from harm that limited his culpability. Just as a juvenile should not be sentenced as an adult, due to a lack of character

---

[2] https://www.mayoclinic.org/diseases-conditions/depression/symptoms-causes/syc-20356007

13

formation, so must the Petitioner receive a lesser sentence than a similarly situated adult offender, as the Petitioner's character was damaged by events outside of his control.

Unfortunately, defense counsel failed to raise such a claim in defense of the Petitioner.. Clearly, counsel's conduct at sentencing fell below any objective standard of reasonableness. Even more clear is the fact that the Petitioner was prejudiced by counsel's unreasonable performance, in that the Petitioner received an unduly harsh sentence while forfeiting the opportunity to raise mitigating factors.

As the Petitioner received ineffective assistance at sentencing in violation of the Sixth Amendment to the United States Constitution, the Petitioner submits that his sentence must be vacated and this matter must be set for rehearing consistent with the findings of this Court and the constitutional principals of fair play and substantial justice.

**III.    The Petitioner is entitled to an evidentiary hearing on these issues.**

The Petitioner contends that he is entitled to an evidentiary hearing on these issues. In order to be granted an evidentiary hearing, a habeas corpus petition must allege sufficient facts which, if true, would support the conclusion of law advanced. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770, 785 (1963); McCoy v. Wainwright, 804 F.2d 1196 (11th Cir. 1986). A petition for habeas corpus requires a hearing unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. United States v. Auten, 632 F.2d 478 (5th Cir. 1980).

In the present case, the Petitioner contends that he has set forth facts in his petition that entitle him to relief. Therefore, at a minimum, the Court should order an evidentiary hearing in this matter.

## CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests that this Honorable Court grant his motion for post-conviction relief.

Respectfully submitted,

_Pedro Contreras_

## **VERIFICATION**

The Petitioner herein, Pedro Contreras, hereby declares, verifies and states under penalty of perjury that the facts stated in the foregoing motion and memorandum of law are true and correct to the best of his knowledge and belief.

Executed on ___11-10-22___, pursuant to 28 U.S.C. §1746.

_____*Pedro Contreras*_____
Pedro Contreras

# EXHIBITS

Exhibit A - Affidavit, Pedro Contreras

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Memorandum of Law has been sent this 1ᵗʰ day of ꪜꪝ, 2022, to the Clerk of Courts.

*Pedro Contreras*

# AFFIDAVIT OF PEDRO CONTRERAS

The Affiant, being the Petitioner herein, being first duly sworn, says:

1. He affirms and confirms all of the facts contained in the attached Memorandum, as if fully reiterated herein;

2. The facts stated in the memorandum, including those not reflected in the Record, are true to the best of his information and belief.

3. Specifically, the Affiant swears and affirms as to the following matters not reflected in the record:

    A. My attorney failed to investigate Clifford Doyle Wingard prior to my trial in case number 7:19-cr-00251-DC-1. Specifically, Wingard utilized a fake online account to entice me to send nude photographs. Wingard then blackmailed me into committing the acts at issue with the victim.

    B. My attorney failed to investigate the fact that the IP address from whence the offending materials originated was accessible to numerous parties, and the material at issue could have been produced or obtained by a third party.

    C. As counsel failed to conduct adequate pre-trial investigation, I had little choice but to accept a plea, as I was not presented with any other viable option by defense counsel. Had counsel conducted the above investigation, I would not have entered a guilty plea, but would have instead proceeded to trial.

    D. I suffered from prior mental, physical and sexual abuse at the hands of Clifford Doyle Wingard. Such events caused me to suffer from anxiety and depression.

USPS Priority Mail Flat Rate Envelope

US POSTAGE PAID: $9.90
Origin: 79745
11/22/22
4846750745-07

PRIORITY MAIL®
0 Lb 4.60 Oz
RDC 04
EXPECTED DELIVERY DAY: 11/25/22
C091

SHIP TO:
200 E WALL ST
MIDLAND TX 79701-5217

USPS TRACKING #: 9505 5132 7467 2326 2213 49

FROM:
Pedro Contreras 42037-480
FCI Hazelton
1640 Skyview Ln
Bruceton Mills, WV

RECEIVED NOV 28 2022
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

TO:
Clerk, United States District Court
for Western District of Texas
200 E Wall Room 222
Midland TX 79701

SCREENED BY NOV 28 2022
COMPLETED